**MILBERG LLP**
DAVID E. AZAR (SBN 218319)
dazar@milberg.com
Nicole M. Duckett (SBN 198168)
nduckett@milberg.com
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

**ZELDES HAEGGQUIST & ECK, LLP**
HELEN I. ZELDES
helenz@zhlaw.com
625 Broadway, Suite 1000
San Diego, California 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

*[additional plaintiffs' counsel on signature page]*

FILED
CLERK, U.S. DISTRICT COURT
OCT 29 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CV13-7991 CBM (MANx)

| | |
|---|---|
| HARVEY DUNN, individually and on behalf of all other similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT FOR: |
| AOL, INC., | (1) Violation of California Civil Code § 1750 *et seq.* (Consumer Legal Remedies Act); |
| Defendant. | (2) Violation of California Business & Professions Code § 17200 *et seq.* (Unfair Competition); and |
| | (3) Unjust Enrichment |
| | DEMAND FOR JURY TRIAL |

COPY

CLASS ACTION COMPLAINT

Plaintiff Harvey Dunn ("Dunn" or "Plaintiff"), individually and on behalf of the class defined below, by his undersigned counsel, alleges the following upon personal knowledge as to his own acts and, as to all other allegations, upon information and belief and investigation by counsel, including a review of publicly available documents.

## NATURE OF THE ACTION

1.     Plaintiff, like millions of other AOL customers, is a senior citizen and not tech-savvy.  When he signed up for AOL over ten years ago, he was paying for AOL dial-up access to the internet, and also for AOL content and email.  AOL subsequently changed its policies, and stopped charging for its content and email, but failed to properly disclose that to its paying customers, all the while billing them using the same inadequate terminology as before -- which simply said "AOL Service."

2.     When Plaintiff switched in January 2011 to Time Warner broadband to obtain faster internet speeds, it was no longer necessary for him to pay AOL for anything—indeed, AOL was offering the email/content services he used for free, and the dial-up ISP service of days gone by was duplicative and vastly inferior. However, he continued to receive, and pay, $17.99 per month to AOL for what AOL simply listed as "AOL Service," thus recklessly perpetuating the illusion that paying subscribers are still receiving and using the same service they signed up for.

3.     AOL is well aware that the vast majority of its paying customers are not using its nearly obsolete "dial-up" services, and misunderstand what they are paying for.  AOL's technology allows it to easily tell which of its paying customers are using AOL's dial-up ISP services. AOL knows that Plaintiff, and millions of other consumers have absolutely no use for their paid accounts, or AOL dial-up service they do not need and are not using.

4.      However, AOL is financially motivated to keep its still paying customers in the dark because their subscription services account for over 30% of AOL's revenues, and still accounts for the vast majority of AOL's profits.

5.      Plaintiff brings this class action on behalf of himself and a class of residents of California ("Class Members") that purchased AOL dial-up services to use as their internet service provider ("ISP"), and were charged for those services despite having not used AOL's dial-up for at least three consecutive months.  The Class Period is October 29, 2009, through the filing of the class certification motion in this litigation (the "Class Period").

6.      Plaintiff brings claims for Defendant's violations of the California Unfair Business Practices Act, Business & Professions Code section 17200 *et seq.*; the California Consumer Legal Remedies Act , Civil  Code section 1750 *et seq;* and Unjust Enrichment.   Plaintiff and the Class seek declaratory judgment, injunctive relief, restitution and disgorgement of Defendant's profit from the false representation that Plaintiff and the Class have to continue making monthly payments in order to access AOL service.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d) because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendant's state of citizenship (New York).

8.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Specifically, Plaintiff resides in this District, is a citizen of this District, and has for virtually all the time relevant herein (through August 2013) been charged by AOL to provide a service to his home in this District.  Venue is proper pursuant to 28

U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, marketing and use of AOL services in this District. In addition, thousands of California consumers are members of the class.

### THE PARTIES

9.     Plaintiff Dunn is and was at all times relevant herein, a resident of Los Angeles County, California. Plaintiff Dunn is 76 years old.  Plaintiff Dunn began using AOL as his primary Internet Service Provider more than 10 years ago. Plaintiff was charged $17.95 a month on his credit card for AOL service.  The AOL charge on his credit card statement says only "AOL Service."  Plaintiff requested a detailed billing statement from AOL and was provided a statement that also says only "AOL Service."  Unaware that AOL had years earlier stopped charging for virtually all of the "services" Plaintiff understood he was paying for, Plaintiff reasonably believed such payments were necessary for him to access the internet and his AOL content (such as his AOL email account and individualized settings on the AOL website), which were the reasons he became an AOL subscriber.   In January, 2011, Plaintiff began using Time Warner broadband services for faster internet but did not cancel his AOL account at that time because he reasonably thought he was still required to have AOL in order to access the internet and his AOL content, even though he did not need AOL dial-up to access the internet.  When Plaintiff learned that he could get the same "AOL content" with a free AOL account, Plaintiff cancelled his AOL subscription in August 2013.

10.     Defendant AOL, Inc., ("AOL") is a Delaware Corporation with its principle place of business at 770 Broadway, New York, New York. The company's business spans digital distribution of content, products, and services, which it offers to consumers, publishers, and advertisers.

CLASS ACTION COMPLAINT

- 3 -

## HISTORY OF AOL SERVICE

11.    At the dawn of the internet era in the 1990s, a small number of companies provided the gateways through which technology savvy consumers could access the world-wide-web, and use primitive web features like chat-rooms. Companies such as AOL, Prodigy, CompuServe provided users in-home access to the internet, often for an hourly fee.

12.    These companies were early Internet Service Providers (ISPs), which connected users to the internet using telephone lines. Consumers could use their phone lines to "dial-up" an ISP, and have access to email and the growing amount of information available on the internet.

13.    By the late 1990s AOL dominated the consumer internet market. Along with connecting customers to the internet with its ISP service, AOL offered email and various "channels" that provided content for aggregated information such as news, reference, travel, and so on. AOL thus functioned as an ISP, a content provider, and a hub or portal to content provided by others—similar to Yahoo.com, MSN.com and Google.com. Below is the home page of AOL version 2.5, as it appeared in 2003:



14.    In 1996 AOL revolutionized in-home internet communication by offering its email, chat, and other services for a flat rate of $19.95 a month.  For this flat fee, users could access AOL's web content, including email, chat, AOL Instant Messenger, in addition to connecting to the internet through AOL's dial-up service.

15.    AOL was thus offering a total-package of bundled internet services to its paying subscribers.  It is estimated that roughly one half of the people in the U.S. using the internet at the time did so through AOL.

16.    In 2002 the Company had over 35 million subscribers who used AOL as their primary, if not only, means to access the growing internet. AOL was their primary content provider, the host of their email accounts, and their ISP.

17.    However, as technology improved, telecommunication companies began offering consumers access to much faster "broadband" internet connections, and AOL's customer base began to dramatically decrease.  Content began to be offered by many other companies, including established news organizations, publishers and individuals.  AOL's grip on the internet as a one-stop-shop for access, content and links eroded as people began accessing the internet though

faster connections, using search engines and other portals as their home screens and launching point for content.

18.     In 2006 AOL made the strategic business decision to *stop charging* for services that it previously bundled with its ISP services. By continuing to link its decreasingly popular dial-up ISP services with its portal/email services, AOL had been losing not only paid subscribers but users of its content, links and portal services, costing it advertising revenue and steering it towards internet irrelevancy. AOL hoped that it could still remain relevant as a provider or portal services, instead of sending AOL content/portal users into the arms of Yahoo!, Microsoft, Google, and many other providers of free email and portal services.  Accordingly, the Company began giving away e-mail accounts and other internet services, such as parental-control and security tools, and the content channels on its AOL.com website.   However, *AOL never properly notified its paying customers of this fundamental change*.

19.     Media reports from the time suggest that the move came "as AOL struggle[d] to reinvent itself as millions of dial-up Internet users cancel[ed] their subscriptions and jump[ed] to high-speed connections." Sara Kehaulani Goo, *In Strategy Shift, AOL Makes Most Services Free*, Washington Post (August 3, 2006), http://www.washingtonpost.com/wp-dyn/content/article/2006/08/02/AR2006080200360.html.

### AOL Knowingly Charges Customers For Services They Did Not Need And Do Not Use

20.     While the company recognized that dial-up was a thing of the past, and decided to increase advertising revenue by offering free content on-line, it exploited the large disparity of technical knowledge between it and its customers by not properly explaining to customers that the reasons that prompted customers to obtain an AOL subscription had fundamentally changed.  In fact, those reasons

(ISP services plus content) no longer existed for Plaintiff and members of the Class.

21.     AOL charges its subscribers, including Plaintiff, by directly billing the customers' credit card every month.

22.     AOL's monthly charge on customers' credit cards, like the charge Plaintiff received each month, do not specify which services customers are paying for, and, as noted above, instead lists simply "AOL Service."  This representation perpetuates the illusion that paying subscribers are still receiving and using the same service as before.

23.     AOL is financially motivated to keep its still paying customers in the dark because their subscription services account for over 30% of AOL's revenues, and still accounts for the vast majority of AOL's profits, " specifically generat[ing] *more than all* of the company's profits, after accounting for AOL's corporate costs." Henry Blodget, *AOL's Dial-Up Subscription Business Produces More Than All of the Company's Profit*, Business Insider (Feb. 8, 2013, 9:18 AM), http://www.businessinsider.com/aol-subscription-business-profit-2013-2 (emphasis in original); *see also* AOL Form 10-K, filed February 28, 2013, at 28.

24.     Indeed, that AOL is recklessly exploiting its paying customers is an open secret within the industry and inside AOL's corporate offices.

25.      As one newspaper described it: "For five years, AOL has been cashing in on users who don't know they can cancel the paid service and still get all the benefits." Jim Hillibish, *On Computers--Still paying for AOL?*, CantonRep.com (Feb. 7, 2011, 1:00 PM), http://www.cantonrep.com/news/business/x549729983/On-Computers-Still-paying-for-AOL#ixzz2flV5DI5u.

26.     On January 24, 2011, *The New Yorker* published an article about AOL's newly hired CEO.  In the article, the authors report that, "The company still

gets **eighty per cent of its profits** from subscribers, **many of whom are older people who have cable or DSL service but don't realize that they need not pay an additional twenty-five dollars a month to get online and check their e-mail**." Ken Auletta, *Can Tim Armstrong Save AOL?*, The New Yorker, Jan. 24, 2011, http://www.newyorker.com/reporting/2011/01/24/110124fa_fact_auletta (emphasis added).

27.   The article also quotes a former AOL executive as saying, "'***The dirty little secret . . . is that seventy-five per cent of the people who subscribe to AOL's dial-up service don't need it***.'" *Id.*  (emphasis added).

28.   Similarly technology blog TechCrunch reported in 2012 that proposals to educate and specifically disabuse customers of the misapprehension that they need to pay AOL for the internet were considered internally by AOL executives but **specifically rejected by AOL higher ups**:

> A[OL] intentionally doesn't try too hard to educate these legacy customers about their email package now being free.  We also heard that when A[OL] came out with the new 'Project Phoenix' Mail product in 2010, many in A[OL] Consumer Applications wanted to market it as being free but their suggestions were overturned by higher-ups as the percentage of misinformed subscribers still ponying up just to use A[OL] Mail is very profitable.

Alexia Tsotsis, *Why Is Aol Still Charging People For "Email"?*, TechCrunch Blog (Jan. 4, 2012), http://techcrunch.com/2012/01/04/aol-mail/.

29.   A recent article in the *Washington Post*, points out that while AOL's most recent earnings figures estimate 2.5 million customers still pay for AOL dial-up monthly, "**[n]ot all of those people are even aware that they're still paying**, which makes AOL's continued earnings from dial-up services a particularly genius form of memory-hole leeching."  Brian Fung, *The slow death of dial-up: 2 percent*

*of us still use AOL*, Wash. Post, Aug. 7, 2013, http://www.washingtonpost.com/blogs/the-switch/wp/2013/08/07/the-slow-death-of-dial-up-2-percent-of-us-still-use-aol/ (emphasis added).

30. In 2012, *The New Yorker* reported: "Gradually, these people [paying subscribers] are dying off, or, with the help of their grandkids, figuring things out. AOL has known for a long time that it needs to find new revenue streams, but it has done so slowly." Nicholas Thompson, *You've Got Patents: AOL's Desperate Move*, The New Yorker Blog (Apr. 9, 2012), http://www.newyorker.com/online/blogs/culture/2012/04/aol-patents.html.

31. An *ABC News* report from Las Vegas in 2012 stated: "More than three million people still use AOL dial-up. Millions more kept their e-mail addresses. Many who thought they had the free version, however, are actually paying for it, and it's costing them big time. Angela lives in Summerlin. In 1995, she and her family signed up for AOL. Back then, it was their primary Internet service provider. In 2006, AOL started offering its services for free. Millions of people took advantage of that, but ***millions more like Angela assumed they were no longer being charged***. Since they never canceled their automatic payments, they have been unnecessarily giving AOL $17.95 a month for six years." Michelle Mortensen, *Customers Still Paying for Free AOL Service*, 8 News NOW, (Dec. 11, 2012, 7:35 AM), http://www.8newsnow.com/story/20312670/customers-still-paying-for-free-aol-service (emphasis added).

32. A 2011 article from *Business Insider* suggested: "Unless AOL can figure out a way to give subscribers something that they *do need to pay for* (and then keep paying), this will eventually come to an end. AOL is down from 35 million subscribers in 2002. But if a big portion of AOL's subscribers really are only paying the company because they think they have to keep using their free email, you have to agree—this is not ending fast enough." Nicolas Carlson, *AOL's*

*"Dirty Secret": Email This Post To Your Parents And Grandparents To Make Sure They Aren't Paying AOL When They Don't Have To*, Business Insider (Jan. 20, 2011, 3:17 PM), http://www.businessinsider.com/how-to-cancel-aol?op=1#ixzz2flURC0qj (emphasis in original).

33.     Consistent with these reports, AOL's most recent annual report filed with the Securities and Exchange Commission on Form 10-K explains that "[t]he average paid tenure of our domestic AOL-brand access subscribers was approximately 12.9 years and 11.7 years for the three months ended June 30, 2013 and 2012, respectively."   AOL does not get new paying dial-up customers. Instead, it preys on customer confusion that it knows about, knowingly perpetuates, and could easily fix, but which it continues to exploit for profit.

## **CLASS ALLEGATIONS**

34.     Plaintiff brings this action on its own behalf and as a Class Action pursuant to Rules 23(a), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class  defined as:

> All residents of California ("Class Members") who, from October 29, 2009, through the filing of the class certification motion in this litigation, purchased AOL dial-up services as their internet service provider ("ISP"), and were charged for those services despite having not used AOL's dial-up for at least three consecutive months.

35.     In the alternative, Plaintiff brings this action on its own behalf and as a Class Action pursuant to Rules 23(a), and  23(b)(2) of the Federal Rules of Civil Procedure, on behalf of a class defined the same as above, seeking injunctive relief prohibiting AOL from continuing these practices, and ordering the Company to send out court-approved notices explaining that customers do not need to pay monthly to access their accounts, and requiring consumers to affirmatively opt-in to ISP service.

36.     Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.

37.     This action involves questions of law and fact common to Plaintiff and all members of the Class, which include:

(a)     Whether Defendant charges an improperly disclosed fee to consumers who do not use AOL dial-up;

(b)     Whether Defendant violated California Civil Code Section 1750 *et seq.*;

(c)     Whether Defendant violated California Business & Professions Code Section 17200 *et seq.*;

(d)     Whether Plaintiff and Class Members sustained damages resulting from Defendant's conduct and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

38.     Plaintiff understands and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class.  Plaintiff will fairly and adequately protect the interests of the Class and have no interests adverse to or that directly conflict with the interests of the other members of the Class.

39.     Plaintiff has engaged the services of counsel who are experienced in complex class litigation, who will adequately prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiff and the absent Class Members.

40.     Plaintiff's claims are typical of those of the absent Class Members because Plaintiff and the Class Members each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein.  Class members are easily identifiable by AOL through automated/computerized methods; AOL knows

who its paying customers are and can identify which of them stopped using dial-up ISP services and when they did so.

41.     This action is brought under Rule 23 because Defendant has acted on grounds generally applicable to all members of the Class.

42.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations.

43.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### Violation of California Civil Code Section 1750 *et seq.*
### [Consumer Legal Remedies Act]

44.     Plaintiff incorporates the above allegations by reference as though fully set forth herein.

45.     This cause of action is brought pursuant to the Consumer Legal Remedies Act (CLRA) and seeks relief for the sale or lease of goods or services to consumers.

46.     AOL's actions, omissions, representations and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

47.     Plaintiffs is a "consumer" as that term is defined by the CLRA in California Civil Code § 1761(d).

48.     AOL ISP and internet content are "goods" and/or "services" within the meaning of California Civil Code § 1761 (a) and (b).

49.    By engaging in the actions, representations and conduct set forth in this complaint, AOL has violated, and continues to violate, § 1770(a)(5). AOL's acts and practices constitute unfair methods of competition and unfair or deceptive acts or practices because they misrepresent the characteristics, benefits, and uses of the internet services in they provide to customers by not informing customers that the monthly charge is necessary only to continue receiving dial-up services, which class members do not need, and do not use.

50.    By engaging in the actions, representations and conduct set forth in this Class Action Complaint, AOL has violated, and continues to violate, § 1770(a)(16) of the CLRA.  Specifically, in violation of California Civil Code § 1770(a)(16), AOL's acts and practices constitute unfair methods of competition and unfair or deceptive acts or practices in that ***they represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not***.  When customers, like Plaintiff, became AOL subscribers, their monthly bill for "AOL Service," provided them access to dial-up internet, along with their AOL account and AOL content.  By continuing to charge a monthly fee for "AOL Service," without explaining that the fee is no longer necessary to access AOL accounts or content, and without explaining exactly what it is that the customer continues to pay for (which had changed dramatically since the time customers originally subscribed to AOL), AOL represents that its monthly service had been supplied in accordance with previous representations, when it has not.

51.    Pursuant to section 1782(a) and (d) of the CLRA, on July 30, 2013, Plaintiff, by his counsel, (i) notified Defendant, by means of a letter sent to Defendants via certified mail, of its particular violations of the CLRA, as alleged herein, (ii) demanded that Defendant correct said violations, and (iii) notified Defendant of his intent to seek damages on that claim, pursuant to California Civil

Code section 1782(a).  A true and correct copy of the demand letter, and return receipt is attached as Exhibit A.

52.   Defendants did not respond to Plaintiff Dunn's notice and demand letter within 30 days, or at all.

53.   Plaintiffs request that this Court enjoin AOL from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If AOL is not restrained from engaging in these types of practices in the future, Plaintiff, members of the Class and other members of the general public will continue to suffer harm.

54.   Defendant's conduct in continuing to charge Plaintiff and Class Members in the manner described above was an unfair act and practice which caused them to suffer a substantial loss of income and caused financial, emotional, and physical distress.

55.   Further, Plaintiff, and many class members are senior citizens within the meaning of California Civil Code Section 3345 and as a consequence of Defendant's wrongful actions herein, Plaintiff is entitled to a trebling of any damages imposed by the trier of fact pursuant to Sections 1780(b)(1) and 3294 of the California Civil Code.

56.   The Class incurred monetary damages from Defendant's conduct equal to the amount AOL charged them monthly for dial-up.

57.   Plaintiff and Class Members seek restitution, declaratory and injunctive relief, and other relief allowable under Section 1750 *et seq.*

## COUNT II

### Violation of California Business and Professions Code Section 17200 *et seq.*

58.   Plaintiff incorporates the above allegations by reference as though fully set forth herein.

59.     The circumstances giving rise to Plaintiff's allegations occurred in the State of California, where Plaintiff has resided at all relevant times, and where he continues to reside.  Therefore, application of California law is appropriate.

60.     By engaging in the acts and practices described above, Defendant committed one or more acts of "unfair competition" within the meaning of Business & Professions Code Section 17200.  "Unfair competition" is defined to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Business & Professions Code § 17500 *et seq.*]."

61.     Defendant committed "unfair" business acts or practices by, among other things:

(a)     engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and Class Members;

(b)     engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members; and

(c)     engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

62.     Plaintiff and Class Members lost money and suffered injury in fact, including damage from being continually charged for services that were obsolete and that they no longer used or needed, or that were being provided at no cost, and because Defendant failed to properly disclose this information to Plaintiff and Class Members and perpetuated the illusion with inadequate descriptions of "AOL Service" on credit card and/or billing statements as alleged above.  The amount of the injury is equal to the AOL customer's monthly charge, which, in Plaintiff's case, was $17.95.  Plaintiff and Class Members would not have paid Defendant if they had been aware of the incomplete nature of Defendant's representations about their participation in AOL service.

63.   Plaintiff and Class Members seek restitution, declaratory and injunctive relief, and other relief allowable under Section 17200 *et seq.*

## COUNT III

### Unjust Enrichment

64.   Plaintiff incorporates the above allegations by reference as though fully set forth herein.

65.   As a result of Defendant's unfair marketing, advertising, and billing for AOL services, Defendant was enriched at the expense of Plaintiff and Class Members  Defendant continuously billed its customers for a service that they were no longer using or that Defendant provided for free, and that Defendant knew Class Members, like the Plaintiff, were only paying for because they believed that it was necessary for them to access the internet and the AOL content they had to pay for originally.

66.   Under the circumstances described above, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that were received from Plaintiff and the Class.  It would be unjust and/or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class.

67.   Accordingly, Plaintiff and the Class seek an order establishing Defendant as constructive trustee of the profits that served to unjustly enrich it, together with interest during the period in which Defendant has retained such funds and requiring Defendant to disgorge those funds to Plaintiff and the Class in a manner to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated pray for judgment against Defendant as follows:

A.     An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class Members;

B.     An order declaring that the acts and practices of Defendant constitute violations of California Business & Professions Code § 17200 *et seq*.; California Civil Code (CLRA) § 1750 *et seq*. and constitute unjust enrichment;

C.     For damages pursuant to California law in an amount to be determined at trial, including interest;

D.     For restitution for monies wrongfully obtained and/or disgorgement of ill-gotten revenues and/or profits;

E.     A permanent injunction enjoining Defendant from continuing to harm Plaintiff and the members of the Class and violating California law;

F.     An order requiring Defendant to adopt and enforce a policy that requires appropriate disclosure of the true nature of AOL's paid services, which complies with California law;

G.     Reasonable attorneys' fees and the costs of the suit; and

H.     Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

DATED: October 29, 2013

MILBERG LLP

David Azar

DAVID AZAR
dazar@milberg.com
NICOLE M. DUCKETT
nduckett@milberg.com
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
**MILBERG LLP**
LORI G. FELDMAN (*pro hac vice*)
lfeldman@milberg.com
ANDREI V. RADO
arado@milberg.com
JOHNATHAN P. SEREDYNSKI
jseredynski@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229


**ZELDES HAEGGQUIST & ECK,
LLP**
HELEN I. ZELDES
helenz@zhlaw.com
625 Broadway, Suite 1000
San Diego, California 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

***Attorneys for Plaintiff Harvey Dunn***

**EXHIBIT A**

 **MILBERG** LLP

NEW YORK<br>LOS ANGELES<br>DETROIT

Andrei Rado
Telephone: 212-594-5300
arado@milberg.com

July 30, 2013

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

AOL, Inc.
ATTN: General Counsel/Legal
770 Broadway
New York, NY 10003

Re:   *Demand for Action Pursuant to California Civil Code § 1782*

To Whom It May Concern:

        We represent an AOL consumer subscriber residing in Los Angeles County, California. This letter serves as notice and demand for corrective action by AOL pursuant to Consumers Legal Remedies Act, California Civil Code § 1782 ("CLRA").

        Our client began utilizing AOL internet service provider (ISP) services more than ten years ago. In January 2011, our client subscribed to Time Warner's broadband services, which he continues to utilize to connect to the Internet.  Despite replacing the ISP services that AOL had been providing, our client has continued to be charged, and has paid, monthly charges (presently $17.95/mo) to AOL for a service he does not need and does not use.

        Our client, like millions of other consumers, is billed by AOL through his credit card. The charge appears as a line item on our client's monthly credit card bill. The line simply says "AOL Service", it does not explain what services are being paid for. Because our client is a lay consumer with no specialized technical knowledge, he has reasonably believed that he needs to continue to pay AOL to access the Internet, which was his original reason for subscribing to AOL.

        Our client is typical of millions of other consumers across the United States who pay AOL for services they do not need and do not use because AOL has not explained to them that the reason they subscribed to AOL no longer exists. AOL is well aware of this. As reported in a *New Yorker* article published January 24, 2011:

> The company still gets eighty percent of its profits from subscribers, many of whom are older people who have cable or DSL service but don't realize that they need not pay an additional twenty-five dollars a month to get online and check their email.  **"The dirty little secret," a former AOL executive says," "is that seventy-five percent of the people who subscribe to AOL's dial-up service don't need it.**

One Pennsylvania Plaza · New York, NY 10119 · T 212.594.5300 · F 212.868.1229 · milberg.com



July 30, 2013
Page 2

**[Emphasis added.]**

AOL is easily able to identify whether a particular AOL subscriber uses ISP services simply by checking its own usage statistics.

By billing our client for services AOL knew he did not need and was not using, AOL violated CLRA § 1750 *et seq*., which prohibits "unfair or deceptive acts or practices." Because the fundamental purpose of our client's subscription was to provide him with ISP services, each monthly demand for payment received by our client was a representation to our client that this purpose was addressed by his continued membership and billing, when, as AOL knew, it was not. AOL's practices violate the following subsections of § 1770, among others:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; and

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

AOL's practices also violate California Business & Professions Code § 17200 and § 17500 *et seq*. and constitute a breach of contract.

Pursuant to California Civil Code § 1782, we hereby demand on behalf of our client and all others similarly situated that AOL immediately correct and rectify these violations by initiating a corrective advertising campaign to re-educate consumers regarding the truth about AOL ISP subscriptions, and refunding the monthly fees to consumers to compensate all damage caused by AOL's conduct, plus reimbursement for interest.

We await your response.

Sincerely,

Andrei V. Rado
**MILBERG LLP**

cc:   David E. Azar
      Milberg LLP

      Helen I. Zeldes
      Zeldes Haeggquist & Eck, LLP

MILBERG LLP

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| HARVEY DUNN, individually and on behalf of all others similarly situated, | ) ) ) |
| *Plaintiff(s)* | ) ) ) |
| v. | ) ) ) |
| AOL, INC., | ) ) ) |
| *Defendant(s)* | ) ) |

**CV13-7991 (BM(MANx)**

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   AOL, Inc.
c/o Corporation Service Company which will do Business in California as
CSC - Lawyers Incorporating Service
2710 Gateway Oaks Dr., Suite 150N
Sacramento, CA 95833

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   MILBERG LLP
DAVID E. AZAR (SBN 218319)
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  OCT 2 9 2013   _____

*Signature of Clerk or Deputy Clerk*

ORIGINAL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Consuelo B. Marshall_____ and the assigned Magistrate Judge is _____Margaret A. Nagle_____ .

The case number on all documents filed with the Court should read as follows:

## 2:13CV7991 CBM MANx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____October 29, 2013_____
Date

By  J.Prado _____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| HARVEY DUNN, individually and on behalf of all others similarly situated, | AOL, INC., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |
|---|---|
| MILBERG LLP; DAVID E. AZAR<br>One California Plaza, 300 South Grand Avenue, Suite 3900<br>Los Angeles, California 90071<br>Telephone: (213) 617-1200, Facsimile: (213) 617-1975 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332(d); 28 U.S.C. 1391(a); Cal. Civ. Code Section 1750, et seq.; Cal. Bus. & Prof. Code Section 17200, et seq. Plaintiff seeks declaratory judgment, injunctive relief, restitution and disgorgement of Defendant's profit from the false representation that Plaintiff has to continue making monthly payments in order to access AOL service.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☒ 890 Other Statutory Actions | | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: **CV13-7991**

CV-71 (09/13) CIVIL COVER SHEET Page 1 of 3

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
|  | A PLAINTIFF?  Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?  Then check the box below for the county in which the majority of PLAINTIFFS reside. |  |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | ☐ Orange | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
|  | ☐ Other | ☐ Other | Western |

| Question C:  Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1.  Is either of the following true?  If so, check the one that applies: | C.2.  Is either of the following true?  If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION.  Enter "Southern" in response to Question D, below.  If none applies, answer question C2 to the right.  ➡ | Your case will initially be assigned to the EASTERN DIVISION.  Enter "Eastern" in response to Question D, below.  If none applies, go to the box below.  ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | WESTERN DIVISION |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: October 29, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |